IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SARAH J. CORDOVA,

       Plaintiff,

vs.                                                                   Civ. No. 01-1157 MV/WWD

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse the Administrative Decision, filed June 21, 2002 **[Doc. 6]**. Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for a period of disability and disability insurance benefits. Plaintiff alleges a disability which commenced March 13, 1998, arising from arm pain. Tr. at 96. Plaintiff claims that she is prevented from working because repetitive motions "make my arms, hands, shoulders go numb and neck area, they hurt all the time." Id.

    2. Plaintiff filed her application for benefits on July 10, 1998. Tr. at 69. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") issued a decision on December 13, 1999 denying Plaintiff's application. Tr. at 10-22. On August 9, 2001, the Appeals Council denied Plaintiff's request for a review, thus rendering the ALJ's decision the final decision of the Commissioner. Tr. at 5. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. § 405(g).

    3. Plaintiff's date of birth is September 3, 1951. Tr. at 67. Plaintiff has completed high

school, attended beauty school for one year and worked as an assembler for 28 years. Tr. at 29-20. The ALJ concluded that Plaintiff is not disabled because despite her impairments, she "has been able to make a satisfactory adjustment to a significant number of jobs in the national economy." Tr. at 18.

4. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

5. Plaintiff alleges the following errors: (1) There is new and material evidence that should be considered; (2) The ALJ erred in failing to evaluate Plaintiff's condition under Listing 1.02 and in failing to fully evaluate Plaintiff's condition under Listing 12.04; (3) The ALJ erred in his assessment of Plaintiff's credibility; and (3) The ALJ erred in finding that Plaintiff had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

6. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson, 987 F.2d at 1486 (citing 42 U.S.C. §423 (d)(1)(A)); see also 42 U.S.C. § 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.

Id. (citations omitted).

7. At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity ("RFC") to do work in the national economy other than past relevant work. Thompson, 987 F.2d at 1487 (citations omitted).

### *First Alleged Error - New and Material Evidence*

8. Plaintiff attaches additional medical records to her memorandum, alleging that they constitute "new and material" evidence that should be considered. It is not appropriate for this Court to consider and weigh such evidence in its review of the ALJ's decision. See, e.g., Trimiar v. Sullivan, 966 F.2d 1326, 1328 (10th Cir. 1992) ("The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]."). Further, pursuant to sentence six of § 405(g), the Court "may order additional evidence to be taken before the [Commissioner] 'only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989) (citing 42 U.S.C. § 405(g)); see also Cagle v. Califano, 638 F.2d 219, 221 (10th Cir. 1981) (citing 42 U.S.C. § 405(g)).

9. Here, Plaintiff has not shown good cause, indeed, any cause, why the evidence she seeks to admit was not presented to either the ALJ or the Appeals Council in a prior proceeding. Thus, the materials submitted by Plaintiff do not justify a remand pursuant to sentence six of §

405(g). See Melkonyan v. Sullivan, 501 U.S. 89, 100 (1991); Roman v. Apfel, 24 F.Supp.2d 263, 273 (D.Conn.1998) ) (noting that "the regulations support a determination that the claimant must show good cause for failure to present the new evidence to both the ALJ and the Appeals Council"). Moreover, Plaintiff does not allege, nor is it apparent, that these materials would affect the ALJ's decision with respect to the time period at issue.[1] Accordingly, I find that the additional materials submitted by Plaintiff do not justify a remand.

### *Second Alleged Error - Listing of Impairments*

Listing 12.04

10. Plaintiff contends that the ALJ erred by not fully evaluating Plaintiff's condition under Listing 12.04 (affective disorders). However, Plaintiff misrepresents the ALJ's finding, indicating that "the ALJ stated that he relied entirely on the ratings indicated by the DDS reviewer." Pl.'s Mem. Br. **[Doc. 7]** at 9. The ALJ did not make such a statement. Indeed, as Plaintiff notes, the ALJ found her functional limitations to be "more severe than those found by the DDS reviewer." Pl.'s Mem. Br. at 10. The ALJ considered the findings of at least three examiners in reaching his conclusion that Plaintiff's depression did not meet or equal Listing 12.04. Tr. at 14, 17 (discussing the reports and findings of G.W. Sutton, Ph.D., Dr. Karyn Doddy, and Dr. Joseph Kurtz). Plaintiff essentially argues that some of Dr. Kurtz' statements could support a finding that Plaintiff's depression meets the "B" criteria of Listing 12.04.

11. Dr. Kurtz notes in his report that Plaintiff's "concentration is significantly impaired,"

---

[1] Plaintiff states that the materials she seeks to submit "are prior to the period of disability, but are relevant in demonstrating the history and progression of Ms. Cordova's condition and in setting out limitations prior to the time that she discontinued work and claimed disability." Pl.'s Mem. at 7-8.

tr. at 165, and that he does not think Plaintiff is able to work, tr. at 167. However, in the Permanent Work-Related Mental Impairment Rating Report Work Sheet ("Work Sheet") accompanying his narrative, Dr. Kurtz assessed Plaintiff's level of impairment in the areas of "activities of daily living," "social functioning," "thinking, concentration, persistence and pace," and "adaptation to stress," as ranging from a low of 0 ("no permanent impairment") to a high of 3 ("moderate category of permanent impairment")[2]. Tr. at 168. To the extent that Dr. Kurtz' narrative and form appear somewhat inconsistent, it was reasonable for the ALJ to rely on the assessments set forth in the Work Sheet. See, e.g., Dukes v. Apfel, 156 F.3d 1243, 1998 WL 476770 (10th Cir. Aug. 11, 1998) (unpublished) (finding that the ALJ correctly determined that plaintiff did not suffer from a severe mental impairment, even where the consulting doctor's form and narrative appeared inconsistent). Substantial evidence supports the ALJ's conclusion that Plaintiff's condition does not meet or equal the criteria of Listing 12.04.

Listing 1.02

12. Plaintiff alleges that the ALJ erred when he failed to evaluate Ms. Cordova's condition under Listing 1.02 (active rheumatoid arthritis and other inflammatory arthritis), when she had a documented positive antinuclear antibodies ("ANA") test. Although the ALJ did not discuss Listing 1.02, he found that Plaintiff's pain in her "neck, shoulder, elbows, and arms" did not meet or equal Listing 1.04 (arthritis of one major joint in each of the upper extremities) or 1.05C (disorders of the spine; other vertebrogenic disorders). Tr. at 13. The sole reason offered for rejecting Listings 1.04 and 1.05C was the ALJ's finding that "[Plaintiff's] diagnosis was only

---

[2] The highest level of impairment on the scale is 6 ("maximum category of permanent impairment"). Tr. at 168.

5

of fibromyalgia rather than an orthopedic impairment." Tr. at 13 (emphasis added) (citing to Dr. Doddy's report of February 20, 1999, tr. at 156-57).

13.   However, while Dr. Doddy may not have diagnosed Plaintiff with an "orthopedic impairment," Dr. Mary Bunker[3] assessed Plaintiff as having arthritis[4] on February 23, 1999. Tr. at 163. Such an assessment is relevant evidence regarding whether Plaintiff has an orthopedic impairment and should have been evaluated before the ALJ concluded that Plaintiff did not meet a listed impairment on that basis. See Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) (explaining that "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment"). Nevertheless, there is no indication that the ALJ considered Dr. Bunker's opinion before reaching his conclusion. Nor does it appear that the ALJ explored Plaintiff's allegations on this issue.[5]

14.   Because the finding that Plaintiff does not have an orthopedic impairment is not based on an adequate evaluation of the relevant evidence, it cannot support a conclusion that Plaintiff's condition does not meet Listings 1.04 or 1.05C. The ALJ provided no other reason for finding that Plaintiff did not meet these listings; thus, this matter should be remanded for further proceedings on this issue. On remand, the ALJ should develop the record as necessary, and explain his findings at step three, to include an analysis of whether and why Plaintiff's impairments

---

[3] Although the signature and initials (MB) following the note are not clear, prescription information below the note indicates that the physician is Dr. Mary Bunker. Tr. at 163.

[4] Dr. Bunker did not indicate what form of arthritis she assessed the Plaintiff to have.

[5] In a Reconsideration Disability Report, dated March 30, 1999, Plaintiff stated that she "saw a doctor for arthritis medication." Tr. at 108-11. Plaintiff also testified at the hearing that "I now have arthritis in my joints." Tr. at 41.

do or do not meet or equal one of the listed impairments. In considering that this matter is remanded for further proceedings with respect to Listings 1.04 and 1.05C, the ALJ should also evaluate Plaintiff's condition under Listing 1.02.

### *Third and Fourth Alleged Errors*

15. Because I find that this matter should be remanded for further proceedings at step three, there is no need to address Plaintiff's remaining allegations in depth.[6] However, on remand, if the ALJ concludes that the Plaintiff's condition does not meet or equal a listed impairment, the ALJ should conduct additional proceedings as necessary, based on any new or changed findings resulting from the evaluation of Dr. Bunker's opinion or other evidence.

16. In any further proceedings, the ALJ should insure that any credibility findings are "closely and affirmatively linked to substantial evidence." Houston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1995). For instance, while the ALJ apparently considered Plaintiff's daily activities in assessing Plaintiff's credibility, he failed to explain if or why those activities led him to conclude that Plaintiff's testimony was not fully credible.[7] It is not enough simply to list the evidence that supports a noncredibility determination, the ALJ "must explain why the specific evidence relevant to each factor led him to conclude that claimant's subjective complaints were not credible." Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995) (emphasis added).

17. If additional proceedings include testimony of a vocational expert ("VE"), the ALJ

---

[6] If the ALJ determines on remand that Plaintiff meets or equals a listed impairment, Plaintiff's remaining alleged errors will be moot.

[7] Moreover, the ALJ misrepresented Plaintiff's activity level when he wrote: "[Plaintiff] stated in her Disability Report that she . . . cleans all day." Tr. at 17. In the Disability Report, Plaintiff explained that "cleaning-all day" meant that "all aspects of cleaning can take me all day, my arms get heavy and tired, so I stop and start for as long as it takes." Tr. at 99.

should present a hypothetical question that adequately reflects the Plaintiff's functional limitations with respect to her mental impairments. See Redfearn v. Chater, 99 F.3d 1150, 1996 WL 594278, *3 (10th Cir. Oct. 17, 1996) (unpublished table decision) (indicating that mental impairments should be considered in framing hypothetical questions to a VE). Although the ALJ found that Plaintiff "often" had deficiencies of concentration, persistence or pace, tr. at 21, he did not include this limitation in the hypothetical questions he posed to the VE. Moreover, a description of work that is routine, repetitive and involves low to moderate stress, does not, by itself, fairly and adequately reflect the ALJ's findings with respect to Plaintiff's mental impairments. See Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993) (noting that a VE's testimony can provide substantial evidence to support the ALJ's findings only if the hypothetical question presented to the VE adequately reflects the state of the record); see, e.g., Baker v. Apfel, 159 F.3d 1140 (8th Cir. 1998) (finding that hypothetical questions posed to a VE did not fairly and adequately reflect plaintiff's limitations).

**Recommended Disposition**

I recommend that Plaintiff's Motion to Reverse the Administrative Decision be granted in part. This matter should be remanded for further proceedings consistent with this opinion, to include:

(A) a re-assessment of whether Plaintiff's condition meets or equals a listed impairment at step three, to include consideration of Dr. Bunker's opinion and an evaluation of Plaintiff's condition under Listings 1.04, 1.05C and 1.02; and

(B) additional proceedings as necessary, based on any new or changed findings resulting from an evaluation of Dr. Bunker's opinion or other evidence, to include:

   (1)  insuring that any credibility findings are closely and affirmatively linked to substantial evidence; and

   (2)  the presentation of hypothetical questions to a VE that adequately reflect Plaintiff's functional limitations with respect to her mental impairments.

 Timely objections to the foregoing proposed findings and recommended disposition may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

                  _____
                  UNITED STATES MAGISTRATE JUDGE